## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AILEAF ASHFORD, | : | Civil No. 3:23-CV-00794 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Bloom) |
| CORRECTIONAL ACTIVITIES | : | |
| SUPERVISOR CRULL, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

Before the Court are the motions to dismiss the plaintiff's complaint, filed by the medical defendants and the correctional defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 32, 34.) For the reasons set forth below, the Court will recommend that the medical defendants' motion (Doc. 32) be granted, and the correctional defendants' motion (Doc. 34) be granted in part and denied in part.

## II.   Background

### A.  Procedural Background

The plaintiff, Aileaf Ashford ("Plaintiff"), is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). (Doc. 1 at 4.)  On May 15, 2023, while he was incarcerated by the DOC at State Correctional Institution Huntingdon ("SCI Huntingdon") in Huntingdon, Pennsylvania, he commenced the above-captioned action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") (*id.* at 2) and an application for leave to proceed *in forma pauperis* (Docs. 2; 5 (containing a subsequent application for leave to proceed *in forma pauperis*).)  His complaint, which is comprised of a form complaint (Doc. 1 at 1–12) and a handwritten complaint (Doc. 1-1 at 1–12), asserts violations of the Eighth Amendment to the United States Constitution, as well as claims under Pennsylvania state law. (Docs. 1 at 3; 1-1 at 8– 10.)  In addition, his complaint alleges that the defendants were deliberately indifferent to, and provided inadequate medical care for, an injury he sustained while weightlifting at SCI Huntingdon. (*Id.*)

The defendants are comprised of multiple correctional and medical personnel at SCI Huntingdon.  More specifically, Plaintiff's complaint

names: Crull, a correctional activities supervisor; Goss, a unit manager; Butler and Thompson, sergeants; Brown, Davis, Price, McCorsick, Gabby, and Jane Doe, medical personnel; and John Doe, a physical therapist. (Docs. 1 at 2; 1-1 at 1, 2.)

On October 2, 2023, then-Chief United States Magistrate Judge Karoline Mehalchick issued an Order granting Plaintiff leave to proceed *in forma pauperis*, deeming his complaint filed, and directing the Clerk of Court to serve a copy of his complaint, with—*inter alia*—waiver of the service of summons forms, on the named defendants. (Doc. 11.) In addition, she requested that, in the interests of efficient administrative judicial economy, the defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. (*Id.*) On that same date, the case was reassigned to the undersigned United States Magistrate Judge for further proceedings. As reflected by the Court's docket, the case was then reassigned to United States District Judge Julia K. Munley and referred to the undersigned.

Thereafter, on November 1, 2023, counsel entered an appearance for Defendants Crull, Butler, Thompson, Price, Davis, McCorsick, and Goss (also referred to as Boss on the docket) (collectively, the "DOC

Defendants"), and filed the DOC Defendants' waivers on their behalf. (Docs. 14 through 21.) On November 15, 2023, separate counsel entered an appearance for Defendants Brown and Gabby (collectively, the "Medical Defendants"), and filed the Medical Defendants' waivers on their behalf. (Docs. 22, 23.)[1]

After filing their waivers with the Court, the DOC Defendants and the Medical Defendants filed notices of their intention to seek judgment or dismissal for Plaintiff's failure to file certificates of merit in accordance with Rule 1042.3 of the Pennsylvania Rules of Civil Procedure. (Docs. 25 (containing the Medical Defendants' notice); 26 (containing the DOC Defendants' notice)); *see also* Pa. R. Civ. P. 1042.3 (requiring a plaintiff to file a certificate of merit in any professional negligence action for each defendant within 60 days of the filing of his complaint)).

Thereafter, the Medical Defendants and the DOC Defendants filed motions to dismiss Plaintiff's complaint, along with supporting briefs, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 32 through 35.) Following several extensions of time, Plaintiff filed what

---

[1] The Medical Defendants fully identify their names as Christian Brown, CRNP and Gabrielle Nalley, PA. (Docs. 32, 33.) For purposes of this Report, the Court will continue to refer to Gabrielle Nalley as "Gabby."

appears to be a collective brief in opposition to the Defendants' pending motions (Doc. 46), certificates of merit (Doc. 47), and exhibits, which are comprised of a declaration from a fellow inmate at SCI Huntingdon, inmate request to staff member forms, cash slip forms, and sick call request forms (Doc. 46-1).[2] The Medical Defendants have since filed a reply brief to Plaintiff's collective brief in opposition. (Doc. 48.) The DOC Defendants have not filed a reply brief or sought an extension of time in which to do so. Thus, the Defendants' motions, which have been briefed by the parties, are ripe for the Court's resolution.

---

[2] As a general proposition, when the Court is "ruling on a motion to dismiss, it "may not consider matters extraneous to the pleadings." *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citation and internal quotation marks omitted). However, when an extraneous "document is integral to or explicitly relied upon in the complaint, it may be considered without converting the motion to dismiss into one for summary judgment under Rule 56." *See id.* (citations and internal quotation marks omitted). Accordingly, while the documents attached to Plaintiff's brief in opposition are not explicitly referred to by title in his complaint, they are integral to his allegations. *See, e.g.*, (Doc. 1-1 ¶¶ 26, 31, 37, 43, 45, 46, 48 (discussing various sick call slips and request forms); ¶ 27 (discussing the fellow inmate's statement)).

B.    <u>Factual Background</u>

The factual background in this matter is derived from the allegations in Plaintiff's complaint. Those allegations are as follows. On May 14, 2021, Plaintiff was weightlifting in the yard at SCI Huntingdon, when the pulley cord on a rowing machine that he was using broke, causing him to be sent backwards and "land directly on his back, neck[,] and head." (Doc. 1-1 ¶¶ 11–12.) Plaintiff was "immediately" sent to the medical department, where he was given Motrin and instructed to sign up for "sick call." (*Id.* ¶ 13.)

The following day, Plaintiff could not get out of bed because "[his] back and neck had worsened[.]" (*Id.* ¶ 14.) Later that morning, around 9:00 a.m., he was seen by Defendant Brown. (*Id.* ¶ 17.) Plaintiff discussed his discomfort and pain, and asked if he could stay in the infirmary to avoid "the long painful walk back to his cell on the third tier." (*Id.* ¶ 18.) Defendant Brown's "preliminary prognosis" of Plaintiff was sciatic nerve damage, and she advised him to "constantly move around[.]" (*Id.* ¶ 19.) She also advised him that "this prison [does] not contain an infirmary." (*Id.*)

At approximately 3:45 p.m., after following the advice of Defendant

Brown to keep moving around, Plaintiff walked from the third tier to the "kiosk" where his back gave out on him, causing him to "buckle[ ] onto the floor[.]" (*Id.* ¶ 20.)  He was taken to the medical department in a wheelchair, where he was seen by <mark>McCloskey</mark>, who gave Plaintiff a muscle relaxer and instructed him to return to his cell. (*Id.* ¶ 21.) Plaintiff "again attempted to remain in the medical area due to the extent of his injury," but was informed by McCloskey that "this prison was not equipped to keep Plaintiff in [the] medical department overnight." (*Id.* ¶ 22.) McCloskey "threatened" to send Plaintiff to the Restricted Housing Unit ("RHU") "if he did not hurry." (*Id.* ¶ 23.)  Plaintiff asked McCloskey if he could at least be placed on "bottom tier/bottom bunk status because it was painful walking up and down three tiers, and [he] could not walk to the shower from third tier." (*Id.* ¶ 24.)  In response, McCloskey instructed Plaintiff to speak with his "unit team" about any "moves or special requests." (*Id.* ¶ 25.)

On May 18, 2021, Plaintiff "sent request slips to the unit manager ([D]efendant Goss), and the medical department, in which [D]efendant Goss instructed Plaintiff to get approval of medical restrictions by the medical department." (*Id.* ¶ 26.) Also on that same date, Plaintiff was

informed by a fellow inmate at SCI Huntingdon that, just days prior to the weightlifting equipment breaking, he notified Defendant Crull of the issue with the equipment so that it could be addressed. (*Id.* ¶ 27); *see also* (Doc. 46-1 at 1 (attaching the declaration of Walter Smith, a fellow inmate at SCI Huntingdon who states that, on May 11, 2021, he informed Defendant Crull that the pulley cord on the rowing machine "was about to pop and needed to be fixed")).

For the next three weeks, Plaintiff stayed in his cell on the third tier, "unable to shower or get his food trays." (Doc. 1-1 ¶ 30.) On June 10, 2021, Plaintiff submitted a sick call slip, and he was scheduled for an x-ray and physical therapy. (*Id.* ¶ 31.) The x-ray was performed on June 18, 2021, revealing "damage to Plaintiff's back[,]" and he "was given Celebrex, but again was denied bottom tier/bottom bunk [status] and medical showers."[3] (*Id.* ¶ 32.) Plaintiff asserts that the Celebrex did not provide him any relief and that he was still unable to shower. (*Id.* ¶ 33.)

---

[3] In their briefing, the Medical Defendants assert that, "[o]n June 2, 2021, [Plaintiff] underwent a lumbar x-ray[,]" which "showed no evidence of a fracture or break . . . . It showed, as expected[,] disc space narrowing at L5-S1." (Doc. 33 at 11.) In support of their assertion, the Medical Defendants cite to "Exhibit D, P. 173/187." (*Id.*) The Court notes, however, that it has been unable to locate "Exhibit D" on the docket.

On an unspecified date, Plaintiff "again requested use of the medical shower and double mattress, in which Defendant Price denied Plaintiff's request because she said Plaintiff was able to ambulate." (*Id.* ¶ 34.) Also on an unspecified date, Plaintiff submitted another request to Defendant Price, "inquiring about the shower and physical therapy," and Defendant Davis responded, but "dismissed [Plaintiff's] need for a shower." (*Id.* ¶ 35.) In addition, Plaintiff submitted a sick call slip on July 14, 2021, and he was seen by Defendant Jane Doe, who told him that his injury "could only be made better with physical therapy." (*Id.* ¶ 37.)

Five months after the incident, Plaintiff was scheduled for physical therapy. (*Id.* ¶ 38.) On October 7, 2021, Plaintiff was seen by Defendant John Doe, a physical therapist, who said that Plaintiff's injury could take a long time to heal if not treated properly. (*Id.* ¶ 39.) Defendant John Doe recommended that Plaintiff receive at least "20 minutes of heat to his back daily to relieve pain and help recovery[.]" (*Id.* ¶ 40.) Defendant John Doe assured plaintiff that "he would make a note of it in his file that Plaintiff was to receive heat packs and use of the medical shower." (*Id.*)

Later that day, Plaintiff wrote to Defendant Goss, informing her of Defendant John Doe's findings and requesting use of the medical shower

because he had not showered in "five months[.]" (*Id.* ¶ 41.) Defendant Goss "ignored the medical recommendation and told Plaintiff to consult [the] medical department." (*Id.*) Plaintiff wrote to the medical department, and Defendant Davis responded, instructing Plaintiff "to put in another sick call slip." (*Id.* ¶ 42.) "Plaintiff submitted another sick call slip[,]" but instead of being provided heat packs, he was given a zip lock bag and told to use tap water from his cell, which he asserts does not get hot. (*Id.* ¶ 43.)

During a sick consultation on an unspecified date, Defendant Jane Doe informed Plaintiff that she could not authorize bottom tier/bottom bunk status or use of the medical shower; instead, such authorization had to come from Defendants Davis or Price. (*Id.* ¶ 44.) During the month of November 2021, Plaintiff submitted four sick call slips, all of which went ignored. (*Id.* ¶ 45.) In addition, on December 6, 2021, Plaintiff wrote another request slip to Defendant Price. (*Id.* ¶ 46.) Defendant Davis responded, stating that neither he nor Defendant Price could give authorization, but that Defendant Jane Doe could do that. (*Id.*)

On December 20, 2021, Plaintiff wrote to Defendant Schuluts requesting an "Inmate Disability Accommodation Request Form" so that

10

he could properly submit his request, "but it was ignored." (*Id.* ¶ 47.) On that same date, Plaintiff submitted a sick call slip, which "was ignored again." (*Id.* ¶ 48.) Also on that same date, Plaintiff was seen by Defendant John Doe who told Plaintiff that "he had indeed prescribed heating pads and/or the medical shower [during] the prior consult." (*Id.* ¶ 49.) Defendant John Doe instructed Plaintiff that, if he did not receive the heating pads or shower, Plaintiff "should heat his water in a stinger (inserting electrical cord into water to boil), which[,]" Plaintiff asserts, "is an illegal and dangerous practice." (*Id.* ¶ 50.) Plaintiff "immediately submitted a sick call slip[,] which went unanswered." (*Id.* ¶ 51.) Plaintiff also submitted "several sick call slips and request slips over the next year[,]" but "they all went unanswered." (*Id.* ¶ 52.)

Additionally, "[d]espite knowing [of] Plaintiff's back condition along with [his] two bad knees, on several occasions since the incident, [D]efendant Goss uprooted Plaintiff from a cell where he possessed a bottom bunk, to a different cell where he had to occupy a top bunk, thereby forcing Plaintiff to sleep on [the] floor or pay his new cell mate for the bottom bunk." (*Id.* ¶ 53.) Finally, Plaintiff asserts that "[he] has spent the entirety of his statute of limitations attempting to get some

relief, in which this entire time Plaintiff has endured extreme pain and denied a shower for two consecutive years." (*Id.* ¶ 54.)

In connection with these allegations, Plaintiff asserts numerous Eighth Amendment claims against the Defendants pursuant to Section 1983. Plaintiff's complaint styles these claims as "deliberate indifference to safety" (*id.* at 8), "denial of medical care/inadequate medical care" (*id.* at 9), "inadequate medical facilities conditions of confinement" (*id.*), and "cruel and unusual punishment" (*id.* at 9–10). Because, however, these numerous Eighth Amendment claims contain overlapping allegations and Defendants, the Court construes Plaintiff's *pro se* complaint as asserting Eighth Amendment claims based upon the alleged conditions of his confinement and the alleged deliberate indifference to his serious medical needs.

More specifically, Plaintiff's complaint asserts the following Eighth Amendment conditions of confinement claims: (1) Defendant Crull failed to inspect the weightlifting machine and failed to restrict and/or fix the machine (*id.* ¶ 55); (2) Defendants Brown, Davis, Price, McCorsick, Gabby, Goss, Butler, and Jane Doe failed to provide Plaintiff with bottom tier/bottom bunk status (*id.* ¶¶ 56, 63); Defendants Goss and Butler

12

"repeatedly" moved him to cells that were on the top bunk and on the second or third tiers (*id.* ¶ 57); Defendant John Doe recommended that Plaintiff "cook water with a dangerous and illegal contraband item that could cause further harm . . ." (*id.* ¶ 58); Defendants Price and Davis "run[ ] a medical department that does not contain an infirmary or other necessary medical accommodations[.]" (*id.* ¶ 61); and Defendants Brown, Davis, Price, Gabby, Goss, McCorsick, Thompson, Butler, and Jane Doe denied him a shower for nearly two years (*id.* ¶ 64).

In addition, he asserts the following Eighth Amendment deliberate indifference to serious medical needs claims: Defendants Brown, Davis, Price, Gabby, McCorsick, and Jane Doe refused to follow Defendant John Doe's prescribed treatment plan (*id.* ¶ 59); Defendants Price, Davis, Gabby, McCorsick, and Jane Doe failed to respond to his inmate request and sick call slips (*id.* ¶ 60); and Defendants Brown, Davis, Price, Gabby, McCorsick, Jane Doe, and John Doe "neglect[ed] to treat [his] injury . . ." (*id.* ¶ 62).

In addition to his Eighth Amendment claims, Plaintiff also asserts various negligence claims under Pennsylvania law. The Court construes Plaintiff's negligence claims as follows: a medical negligence claim

against Defendant John Doe for recommending that Plaintiff "engage in an unsafe practice to treat himself . . ." (*id.* ¶ 65); a medical negligence claim against Defendants Brown, Davis, Price, Gabby, McCorsick, and Jane Doe for "neglecting their duty of care in their lack of treatment of Plaintiff's injury . . . " (*id.* ¶¶ 66, 68); and an ordinary negligence claim against Defendant Crull "for failing to ensure weight equipment was not faulty . . . " (*id.* ¶ 67).  For relief, Plaintiff seeks compensatory and punitive damages and any other relief to which he may be entitled.  (*Id.* at 11.)[4]

---

[4] On April 22, 2024, Plaintiff filed a motion seeking leave to file an amended complaint.  (Doc. 43.)  He sought to: identify the John and Jane Doe Defendants; substitute an individual he identified as "McCloskey" for Defendant McCorsick; add the DOC and Wellpath as defendants to this litigation; and assert claims under the Americans with Disabilities Act and Rehabilitation Act.  (Doc. 45 at 2 (citing Doc. 43 at 1–2).)   On May 13, 2023, the Court, upon review of Plaintiff's motion, denied him leave to file an amended complaint.  (Doc. 45.)  Thus, while the factual background regarding Defendants John Doe and Jane Doe have been included in this Report to provide context for Plaintiff's allegations, the Court will not address the claims that Plaintiff has asserted against these Doe Defendants.

III.  **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the United States Court of Appeals for the Third Circuit ("Third

15

Circuit") has aptly summarized:

> [A]fter *Iqbal*, when presented with a motion to dismiss for
> failure to state a claim, district courts should conduct a two-
> part analysis. First, the factual and legal elements of a claim
> should be separated. The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard any
> legal conclusions. *Id.* Second, a District Court must then
> determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for
> relief." *Id.* at 1950. In other words, a complaint must do more
> than allege the plaintiff's entitlement to relief. A complaint
> has to "show" such an entitlement with its facts. *See Phillips*,
> 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*,
> "[w]here the well-pleaded facts do not permit the court to infer
> more than the mere possibility of misconduct, the complaint
> has alleged—but it has not 'show[n]'—'that the pleader is
> entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility"
> determination will be "a context-specific task that requires
> the reviewing court to draw on its judicial experience and
> common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on

the complaint and its attached exhibits, as well as matters of public

record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court

can also consider "undisputedly authentic document[s] that a defendant

attached as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] documents." *Pension Benefit Guar. Corp. v.

White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if

the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

## IV. <u>Discussion</u>

As stated above, Plaintiff filed his complaint pursuant to Section 1983. (Docs. 1, 1-2.) That statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Therefore, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *See Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a

17

remedy for the violation of a federal constitutional or statutory right." *See id.* (citation omitted).

Here, Plaintiff's Section 1983 claims are based upon alleged violations of the Eighth Amendment to the United States Constitution. (Docs. 1, 1-1.) As such, the Court begins its discussion with an overview of the Eighth Amendment.

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (internal citation omitted). However, the United States Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 298 (internal citations and quotation marks omitted). Thus, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the first prong, courts consider whether the deprivation was "'objectively,

sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[,]'" and under the second prong, courts consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

Regarding the first prong (*i.e.*, the objective prong), the United States Supreme Court has explained that prison officials have a duty to provide inmates with life's necessities, including "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  Indeed, "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying [these] basic human needs[.]" *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) (citing *DeShaney v. Winnebago Co. Dep't of Social Svcs.*, 489 U.S. 189, 199–200 (1989)).

Regarding the second prong (*i.e.*, the subjective prong), the United States Supreme Court has explained that a prison official does not act with deliberate indifference "unless the official knows of and disregards

19

an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837.

"[T]he official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists," and the official

"must also draw the inference." *Id.* "The knowledge element of deliberate

indifference is subjective, . . . meaning that the official must actually be

aware of the existence of the excessive risk; it is not sufficient that the

official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120,

133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837–38)).

Here, both the DOC Defendants and the Medical Defendants seek

dismissal of Plaintiff's Eighth Amendment claims, as well as his

Pennsylvania state law claims. (Docs. 32, 34.) For the sake of clarity,

the Court addresses the Defendants' motions separately below, and the

Court begins with the Medical Defendants' motion.

### A.   The Medical Defendants' Motion to Dismiss[5]

The Medical Defendants argue that the Court should dismiss

Plaintiff's Eighth Amendment claims because his complaint fails to

allege that they were deliberately indifferent to his serious medical

needs. (Docs. 32, 33.) Additionally, the Medical Defendants argue that

---

[5] As defined above, the Medical Defendants consist of Brown and Gabby.

the Court should dismiss Plaintiff's medical negligence claim because expert testimony of an appropriate licensed professional is necessary for the prosecution of this claim under Pennsylvania law and that, therefore, the Court should reject Plaintiff's certificates of merit wherein he asserts that such expert testimony is unnecessary here. (*Id.*) The Court addresses these arguments in turn.

## 1. Plaintiff's Eighth Amendment Claims Against the Medical Defendants

Plaintiff's complaint asserts Eighth Amendment claims against Defendants Brown and Gabby based upon the alleged conditions of his confinement and the alleged deliberate indifference to his serious medical needs. (Doc. 1-1.) Regarding the alleged conditions of his confinement, Plaintiff's complaint asserts that Defendants Brown and Gabby failed to provide him with bottom tier/bottom bunk status (*id.* ¶¶ 56, 63) and that they denied him a shower for nearly two years (*id.* ¶ 64). Regarding the alleged deliberate indifference to his serious medical needs, Plaintiff's complaint asserts that Defendants Brown and Gabby refused to follow Defendant John Doe's prescribed treatment plan (*id.* ¶ 59), that Defendant Gabby failed to respond to his inmate request and sick call slips (*id.* ¶ 60), and that Defendants Brown and Gabby "neglect[ed] to

treat [his] injury . . . " (*id.* ¶ 62).

With respect to Defendant Gabby, the Court finds that, much like Defendants Butler and McCorsick discussed *infra*, there is a complete absence of allegations in Plaintiff's complaint that would give rise to a plausible inference that she was personally involved in an asserted deprivation of Plaintiff's Eighth Amendment rights, whether that asserted deprivation is based upon the alleged conditions of his confinement or the alleged deliberate indifference to his serious medical needs. Without such allegations of personal involvement, the Court concludes that Plaintiff's complaint fails to state an Eighth Amendment claim under Section 1983.

Accordingly, the Court will recommend that the Medical Defendants' motion be granted on this basis and that Plaintiff's Eighth Amendment claims against Defendant Gabby be dismissed. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (providing that, to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his constitutionally protected rights); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (stating that "[a] plaintiff

makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct" (citing *Rode*, 845 F.2d at 1207)).

Regarding Defendant Brown, the Court finds that Plaintiff's complaint fails to raise a plausible inference that she acted with any deliberate indifference to either his serious medical needs or conditions of confinement that posed a substantial risk of serious harm. The Court first addresses Plaintiff's medical-needs claim.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated[,]" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999), and prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *Rouse*, 182 F.3d at 197 (explaining that plaintiffs must demonstrate the following two (2) elements: (1) "that the defendants were deliberately indifferent to their medical needs[;]" and (2) "that those needs were serious").

In the prison medical context, the Third Circuit has found deliberate indifference where a "prison official: (1) knows of a prisoner's

23

need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citation omitted).   "It is well-settled[,]" however, "that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Id.*; *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (stating that "[a] prisoner bringing a medical-needs claim must show more than negligence; he must show deliberate indifference to a serious medical need" (citation and internal quotation marks omitted)); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (providing that "[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation" (citations omitted)).   Additionally, "mere disagreement as to the proper medical treatment" is insufficient to establish deliberate indifference.  *Id.* (citations and internal quotations marks omitted).

Here, Plaintiff's complaint reveals that he had only one encounter with Defendant Brown during the relevant period.   Specifically, he alleges that, on May 15, 2021, the day after the weightlifting incident, he was seen by Defendant Brown, who assessed him, rendered a

"preliminary prognosis" of sciatic nerve damage, and recommended that he continue to move around.  (Doc. 1-1 ¶¶ 14, 17–19.)  Thus, assuming *arguendo* that Plaintiff had a serious medical need at the time of this encounter, the Court finds that there are no factual allegations to show that Defendant Brown was deliberately indifferent to that medical need—*i.e.*, that she knew of an excessive risk of serious harm to Plaintiff's health or safety *and* that she consciously disregarded that risk of harm. For instance, there are no allegations suggesting that Defendant Brown intentionally refused to provide Plaintiff with medical care, delayed Plaintiff necessary medical treatment based upon a non-medical reason, or prevented Plaintiff from receiving needed or recommended medical treatment. As such, Plaintiff's complaint fails to state an Eighth Amendment claim against Defendant Brown for deliberate indifference to his serious medical needs.

In addition, the Court finds that there are no factual allegations to show that, at the time of this encounter or at any other time, Defendant Brown was deliberately indifferent to Plaintiff's conditions of confinement—*i.e.*, that she was aware of conditions that posed a substantial risk of serious harm to Plaintiff's health or safety *and* that

she consciously disregarded that risk. *See Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (explaining that in an Eighth Amendment challenge to conditions of confinement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official was both aware of and disregard an excessive risk to the inmate's health or safety (footnotes and internal quotation marks omitted)).

At most, there is an allegation in Plaintiff's complaint that he asked Defendant Brown to stay in the infirmary because he did not want to do the "long painful walk back to his cell on the third tier." (Doc. 1-1 ¶ 18.) There are, however, no allegations in Plaintiff's complaint that would suggest that, at this time or at any other time, Defendant Brown knew that Plaintiff could not walk or be housed on the second or third tier (to the contrary, Plaintiff had walked to the medical department to see Defendant Brown), or that Plaintiff required bottom tier/bottom bunk status or use of the medical shower. As such, Plaintiff's complaint fails to state an Eighth Amendment conditions of confinement claim against Defendant Brown. Accordingly, the Court will recommend that Plaintiff's Eighth Amendment claims against Defendant Brown be dismissed.

## 2.  Plaintiff's Medical Negligence Claim Against the Medical Defendants

Plaintiff's complaint also asserts a medical negligence claim under Pennsylvania law against the Medical Defendants.  (Doc. 1-1 ¶¶ 66, 68.) In support, Plaintiff broadly asserts that the Medical Defendants "neglect[ed] their duty of care in their lack of treatment of [his] injury" (*id.* ¶ 66) and that they "fail[ed] in their duty to properly treat [and] care for [him]" (*id.* ¶ 68).  In response, the Medical Defendants argue that expert testimony from an appropriate licensed professional is necessary for the prosecution of Plaintiff's medical negligence claim and that, therefore, the Court should reject Plaintiff's certificates of merit wherein he asserts that such expert testimony is not necessary here.  (*Id.*)  The Court agrees.

For a plaintiff to prevail on a medical negligence claim under Pennsylvania state law, "the plaintiff must prove that the defendant's treatment fell below the appropriate standard of care."  *Brady v. Urbas*, 111 A.3d 1155, 1161 (Pa. 2015) (citations omitted); *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003) (stating that "medical malpractice can be broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient . . . ").

"[W]hen a plaintiff's medical malpractice claim sounds in negligence, the elements of the plaintiff's case are the same as those in ordinary negligence actions." *Id.*; *accord Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (Pa. Super. Ct. 2007), *aff'd*, 17 A.3d 310 (Pa. 2011), (providing that "the basic elements of medical malpractice and ordinary negligence are the same . . . " (citation omitted)).

Thus, to establish a prima facie case for ordinary and medical negligence claims, a plaintiff must establish: (1) a duty of care owed by the physician to the patient; (2) a breach of that duty; (3) the breach of that duty was the proximate cause of the harm suffered by the patient; and (4) the damages suffered were a direct result of that harm. *See Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019) (citing *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997)). Put differently, "to prevail on a claim of medical negligence, the plaintiff must prove, *inter alia*, that the defendant's treatment fell below the appropriate standard of care— that is, varied from accepted medical practice." *See Mitchell*, 209 A.3d at 314–15.

As "[w]ith all but the most self-evident medical malpractice actions[,] there is also the added requirement that the plaintiff must

28

provide a medical expert who will testify as to the elements of duty, breach, and causation." *Quinby v. Plumsteadville Fam. Prac., Inc.,* 907 A.2d 1061, 1070–71 (Pa. 2006) (citation omitted); *Mitchell*, 209 A.3d at 315 (providing that a "plaintiff in a medical negligence matter is required to present an expert witness who will testify, to a reasonable degree of medical certainty, regarding the standard of care (duty); that the acts of the physician deviated from the standard or care (breach); and that such deviation was the proximate cause of the harm suffered" (citation omitted)).

As explained by the Pennsylvania Supreme Court, "[e]xpert testimony in support of the plaintiff's claim is an indispensable requirement in establishing a plaintiff's right of action, as the treatment and injury typically involved are such that the common knowledge or experience of a layperson is insufficient to form the basis for passing judgment." *Mitchell*, 209 A.3d at 315 (citation omitted); *Toogood*, 824 A.2d at 1145 (explaining that, "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from

that standard, causation and the extent of the injury" (citation omitted)).

This requirement is embodied in Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, which provides that, "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party[.]"  Pa. R. Civ. P. 1042.3(a). This certificate of merit shall either state that: (1) "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm[;]" (2) "the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard[;]" or (3) "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Pa. R. Civ. P. 1042.3(a)(1), (2), (3).

In the event that a party certifies under subsection (3) that expert testimony is unnecessary, "in the absence of exceptional circumstances [that party] is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation." Pa. R. Civ. P. 1042.3(a)(3), Note; *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011) ("Pennsylvania law expressly allows a plaintiff to proceed on the basis of a certification that expert testimony will not be required to prove her claim. Of course, the consequence of such a filing is a prohibition against offering expert testimony later in the litigation, absent 'exceptional circumstances'" (citing Pa. R. Civ. P. 1042.3(a)(3), Note)).

Finally, the Third Circuit has explained that Rule 1042.3 is substantive state law under *Erie R.R. v. Thompkins*, 304 U.S. 64 (1983) and must, therefore, be applied as such by federal courts. *See Liggon-Redding*, 659 F.3d at 262–65; *Schmigel v. Uchal*, 800 F.3d 113, 115 (3d Cir. 2015) (recognizing the same). Neither ignorance of these certificate-of-merit requirements, nor a party's *pro se* status can serve as a reasonable basis for failure to comply. *See Parkway Corp v. Edelstein*,

861 A.2d 264, 267–69 (Pa. Super. Ct. 2004) (concluding that ignorance was not a reasonable justification for failure to comply with Rule 1042.3); *see also Hoover v. Davila*, 862 A.2d 591, 595 (Pa. Super. Ct. 2003) (rejecting *pro se* party's claims that "he was unaware of the new rule of civil procedure requiring certificates of merit or that he did not understand the rule" as "just cause" for untimely filing a certificate of merit).

Accordingly, and in sum, the general rule in medical negligence actions brought under Pennsylvania state law is that a plaintiff *must* present medical expert testimony to establish that the care and treatment he received by the defendant fell short of the required standard of care and that such breach proximately caused his injury. *See Toodgood*, 824 A.2d at 1145. The only exception to that general rule "applies where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons, . . . also conceptualized as the doctrine of *res ipsa loquitur.*" *Id.* (internal citation and quotation marks omitted); *see also Brady v. Urbas*, 111 A.3d 1155, 1162 n.6 (Pa. 2015) (noting that, "[e]xcept in the most obvious cases of negligence (such as where a gauze

pad is left inside a patient's body), expert testimony is necessary to establish the standard of care").

Even where this exception applies, however, it "must be carefully limited[,]" and "three conditions must be met before the doctrine of *res ipsa loquitur* may be invoked"—that is: (1) "either a lay person is able to determine as a matter of common knowledge, or an expert testifies, that the result which has occurred does not ordinarily occur in the absence of negligence;" (2) the agent or instrumentality causing the harm was within the exclusive control of the defendant;" and (3) "the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event." *See id.* at 1149–50.

Here, the docket reflects that Plaintiff filed certificates of merit as to the Medical Defendants. (Doc. 47 at 2, 3.) In his certificates, he asserts that expert testimony of an appropriate licensed professional is "unnecessary" for the prosecution of his claims against the Medical Defendants. (*Id.*) The Court, however, is unpersuaded. Having reviewed the parties' arguments and relevant authority, the Court agrees with the Medical Defendants that the allegations in this case demonstrate that

expert testimony is required for Plaintiff's medical negligence claim. (Doc. 48 at 2–3.)

The issues in this case concern: the signs and symptoms of neck and back pain and addressing those signs and symptoms; assessing what kind of pain medication is needed to treat neck and back pain; determining whether other forms of treatment are necessary, such as x-rays, CT scans, or MRI's; and, finally, addressing whether physical therapy should be pursued for neck and back pain and how such therapy could affect the body. As a result, the Court cannot conclude that these medical issues encompass matters within the common knowledge and experience of laypersons. Indeed, they are not so simple, and the lack of medical skill or care is not so obvious, that they cannot be considered issues within the range of the comprehension of non-medical individuals.

Accordingly, the limited exception of *res ipsa loquitur* does not apply here, and, therefore, medical expert testimony is required for Plaintiff to prove his medical negligence claim. Thus, the Court will recommend that the Medical Defendants' motion to dismiss be granted as to Plaintiff's medical negligence claim, asserted against them under Pennsylvania law.

**B.   The DOC Defendants' Motion to Dismiss**[6]

The DOC Defendants argue that the Court should dismiss Plaintiff's various Eighth Amendment claims for failure to state claims upon which relief may be granted. (Docs. 34, 35.) In addition, they argue that, because the Court should dismiss Plaintiff's Eighth Amendment claims, the Court should also dismiss Plaintiff's state law claims for lack of supplemental jurisdiction. (*Id.*) The Court agrees, in part, and the Court addresses Plaintiff's Eighth Amendment claims first.

**1.   Plaintiff's Eighth Amendment Claims Against the DOC Defendants**

**a.   Weightlifting Equipment**

Plaintiff's complaint asserts an Eighth Amendment conditions of confinement claim against Defendant Crull based upon allegations that Defendant Crull failed to inspect the weightlifting equipment and failed to restrict use of the machine and/or fix the machine. (Doc. 1-1 ¶ 55.) In response, the DOC Defendants argue that the weightlifting equipment did not present a substantial risk of serious harm to Plaintiff, and, further, staff were not deliberately indifferent to any such risk of harm

---

[6] As defined above, the DOC Defendants consist of McCorsick, Davis, Crull, Butler, Thompson, Goss, and Price.

to Plaintiff. (Doc. 35 at 14–16.) The Court agrees.

As explained by the Third Circuit, "[l]ife is fraught with risk of serious harm[.]" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 258 (3d Cir. 2010) ("*Betts*"). "[T]he sports world[,]" which necessarily includes weightlifting, "is no exception." *Id.* But an asserted Eighth Amendment violation, including those stemming from the sports world, "may not be predicated on exposure to *any* risk of serious harm; [rather,] the risk must be "substantial." *Id.* (alteration in original) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). The Third Circuit's opinion in *Betts* provides an illustration of these principles.

*Betts* involved a juvenile detention center that housed juveniles who had been adjudicated delinquent and committed by Pennsylvania's juvenile courts. *Id.* at 252. At the center, the juveniles were permitted to use an outdoor area for football. *Id.* at 252–53. "As was their habit," the juveniles played tackle football without any equipment. *Id.* at 253. Eric Betts ("Betts"), a juvenile who had been committed to the center, was playing football at this outdoor area when he sustained a spinal cord injury while tackling another player. *Id.* at 253. The injury was so severe that it resulted in quadriplegia. *Id.*

36

As a result of this incident, Betts sued the juvenile detention center and several of its staff members, asserting, *inter alia*, that they violated his Eighth Amendment rights by failing to ensure his safety. *Id.* At the summary judgment stage of the litigation, the district court held that there was insufficient evidence to raise genuine issues of fact as to the existence of a substantial risk of serious harm or as to the defendants' deliberate indifference to that risk of harm. *Id.* On appeal, the Third Circuit agreed and affirmed the district court's holding. *Id.* at 256–259.

The Third Circuit reasoned that Betts had failed to present a genuine dispute of fact regarding the objective component of an Eighth Amendment violation because "no reasonable jury could find that allowing [Betts] to play tackle football without protective equipment rises to the level of an objectively serious deprivation of 'the minimal civilized measure of life's necessities.'" *Id.* at 258. In support, the Third Circuit found that Betts had failed to show a sufficient likelihood that serious harm would result from the juveniles playing tackle football without any equipment and, additionally, that Betts had failed to show that allowing the juveniles to do so violated contemporary standards of decency. *Id.* at 257, 258.

Applying *Betts*'s rationale here, the Court finds that Plaintiff's complaint has not alleged the objective prong of his Eighth Amendment claim because his allegations do not show that the weightlifting equipment at SCI Huntingdon rises to the level of an objectively serious deprivation of "the minimal civilized measure of life's necessities." *Betts*, 621 F.3d at 256; *Porter*, 974 F.3d at 441.  More specifically, the Court finds that Plaintiff's complaint has not alleged a *sufficient* likelihood that his injury would result from the weightlifting equipment.  "The mere possibility that an injury may result from an activity does not mean that there is a 'substantial risk of that injury occurring." *Betts*, 621 F.3d at 257 (citation and internal quotation marks omitted)).  This is especially true where, as here, there are no allegations to suggest that anyone else was injured by this equipment. *See Baze v. Rees*, 553 U.S. 35, 50 (2008) (stating that "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a substantial risk of serious harm" (citation and internal quotation marks omitted)).

Additionally, the Court finds that the risks which are associated

38

with weightlifting equipment simply do not violate contemporary standards of decency. *See Atkinson v. Taylor*, 316 F.3d 257, 262 (3d Cir. 2003) (recognizing that, with respect to the objective prong, "the Eighth Amendment requires 'a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk'" (alteration in original) (quoting *Helling*, 509 U.S. at 36)). To the contrary, such risks "are assumed daily by the incarcerated and the free alike." *Betts*, 621 F.3d at 258. And, here, Plaintiff's complaint reveals that he assumed that risk freely. Indeed, there are no allegations that he was required to use, or had been directed to use, the weightlifting equipment.

Accordingly, the Court agrees with the DOC Defendants' contention (Doc. 35 at 15) that, under the objective prong of Plaintiff's Eighth Amendment claim, the issue is not simply whether any risk of harm existed, but whether that risk of harm was substantial. As such, Plaintiff's complaint cannot overcome the isolated nature of the weightlifting equipment's mishap or society's willingness to accept the inherent risk of harm that is associated with such equipment. *See Harbert v. Griffin*, No. 3:17-CV-00406, 2018 WL 10517098, at *1–2 (N.D.

Ind. Feb. 13, 2018) (concluding that the conditions described in the prisoner-plaintiff's complaint—*i.e.*, that the cable cord of the weight machine broke, causing him injury, and that the prison officials knew that the weight machine posed a risk to the prisoners—neither constituted an objectively sufficiently serious risk nor rose to the level that exceeds contemporary bounds of decency under the Eighth Amendment); *see also Christopher v. Buss*, 384 F.3d 879, 880–83 (7th Cir. 2004) (concluding that, even if the defendants knew about the condition on the prison's baseball field—*i.e.*, the "protrusive lip" on the field—and purposefully ignored it, the prisoner-plaintiff was still not entitled to any relief because this condition was not so objectively serious as to implicate the Eighth Amendment, and reasoning that such conditions on baseball fields exist across the country and to say that "exposure" to such a condition on a field could violate the Eighth Amendment would be to imply that prison officials violate the Eighth Amendment whenever they let prisoners play sports at all because a risk of injury, even serious injury, is inherent).

Accordingly, the Court concludes that Plaintiff's complaint has not satisfied the objective prong of his Eighth Amendment claim. As such,

the Court will recommend that the DOC Defendants' motion to dismiss be granted as to Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Crull concerning the weightlifting equipment.

### b. Housing Assignment and Showers

Plaintiff's complaint asserts an Eighth Amendment conditions of confinement claim against Defendants Butler, McCorsick, Davis, Price, and Goss based upon allegations that they failed to provide him with bottom tier/bottom bunk status (Doc. 1-1 ¶¶ 56, 63), as well as an Eighth Amendment conditions of confinement claim against Defendants Goss and Butler for "repeatedly" moving him to cells that were on the top bunk and on the second or third tiers (*id.* ¶ 57). In response, the DOC Defendants argue that Plaintiff's complaint has failed to allege that these conditions deprived him of any basic human need and has also failed to allege that the DOC Defendants were deliberately indifferent to an excessive risk of harm to Plaintiff's health or safety as a result of him occupying a second or third tier cell or top bunk. (Doc. 35 at 16–17.) The Court agrees, in part.

As to Defendants Butler and McCorsick, the Court finds that— much like Defendant Gabby discussed *supra*—there is a complete

absence of allegations in Plaintiff's complaint that would give rise to a plausible inference that they were personally involved in an asserted deprivation of Plaintiff's Eighth Amendment rights.   While Plaintiff names Defendants Butler and McCorsick in his complaint and asserts claims against them, Plaintiff has neither mentioned nor meaningfully discussed these Defendants anywhere else in the body of his complaint. Without such allegations of personal involvement, Plaintiff's complaint fails to state an Eighth Amendment claim under Section 1983.

Accordingly, the Court will recommend that Plaintiff's Eighth Amendment claims against Defendants Butler and McCorsick be dismissed.  *See Rode*, 845 F.2d at 1207 (providing that, to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his constitutionally protected rights); *Chavarriaga*, 806 F.3d at 222 (stating that "[a] plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct" (citing *Rode*, 845 F.2d at 1207)).

Regarding Defendants Davis, Price, and Goss, however, the Court

finds that Plaintiff's complaint states an Eighth Amendment conditions of confinement claim. (Doc. 1-1 ¶¶ 56, 57, 63.)    More specifically, Plaintiff's complaint alleges that: due to his injury, he was unable to ambulate around the prison, including to get his food trays and to reach the showers (*id.* ¶¶ 30, 32–35, 41, 54); he raised his alleged inability to do so with Defendants Davis, Price, and Goss, and requested a change in his housing (*i.e.*, bunk/tier status) and/or use of the "medical shower[,]" but his requests were denied (*id.* ¶¶ 34–36, 41, 46, 53), despite the alleged fact that his x-ray revealed "damage" to his back, and he was in "extreme pain" (*id.* ¶¶ 32, 54); and, as a result of the foregoing, he was unable to shower for "two consecutive years" (*id.* ¶¶ 54, 64).

These allegations, liberally construed and accepted as true, are sufficient to raise an inference that Defendants Davis, Price, and Goss were deliberately indifferent to Plaintiff's basic human need of showering, in violation of the Eighth Amendment. *See, e.g.*, *Twombly*, 550 U.S. at 555–56 (explaining that "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . " (citations, internal citation, and internal footnote omitted)).

As such, the Court will recommend that the DOC Defendants' motion to dismiss be denied to the extent that Defendants Davis, Price, and Goss seek dismissal of Plaintiff's Eighth Amendment conditions of confinement claim based upon his housing assignment and his alleged inability to shower.

### c.  Lack of an Infirmary

Plaintiff's complaint asserts an Eighth Amendment conditions of confinement claim based upon allegations that Defendants Price and Davis "run[ ] a medical department that does not contain an infirmary or other necessary medical accommodations[.]"  (Doc. 1-1 ¶ 61.)  The DOC Defendants argue that this claim does not plead any denial of life's necessities and that staff were still able to provide Plaintiff with medical treatment, despite not having an infirmary at SCI Huntingdon.  (Doc. 35 at 23.)  The Court agrees.

That SCI Huntington lacks an infirmary does not, in itself, amount to an Eighth Amendment violation.  This is especially true where, as here, Plaintiff's complaint alleges that SCI Huntingdon has a medical department, that he was seen at this medical department, and that he ultimately received various forms of treatment, including medication

(*i.e.*, Motrin and Celebrex), an x-ray, and physical therapy. (Doc. 1-1 at ¶¶ 13, 20, 31, 39.) In addition, Plaintiff's complaint has neither alleged that he had an urgent or dire situation in which he needed to be sent to an outside hospital, nor alleged that the DOC Defendants denied any reasonable request for him to be sent to an outside hospital. Finally, despite filing a detailed brief in opposition to the Defendants' pending motions to dismiss his complaint, Plaintiff has not addressed the DOC Defendants' arguments regarding the lack of an infirmary at SCI Huntingdon. Thus, it appears that Plaintiff does not dispute the dismissal of this claim.

Accordingly, the Court concludes that Plaintiff's complaint fails to state an Eighth Amendment conditions of confinement claim against Defendants Price and Davis concerning the lack of an infirmary at SCI Huntingdon. Thus, the Court will recommend that the DOC Defendants' motion be granted as to this claim.

### d. Serious Medical Needs

Plaintiff's complaint asserts the following Eighth Amendment claims for deliberate indifference to his serious medical needs: Defendants Davis, Price, and McCorsick refused to follow Defendant

45

John Doe's prescribed treatment plan (Doc. 1-1 ¶ 59); Defendants Price, Davis, and McCorsick failed to respond to his inmate request and sick call slips (*id.* ¶ 60); and Defendants Davis, Price, and McCorsick "neglect[ed] to treat [his] injury . . . " (*id.* ¶ 62).

Here, to the extent that Plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs is asserted against Defendant McCorsick (Doc. 1-1 ¶¶ 59, 60, 62), the Court finds that there is—as discussed *supra*—a complete absence of factual allegations regarding this Defendant in Plaintiff's complaint. As such, Plaintiff's complaint has not alleged the personal involvement of Defendant McCorsick with respect to these Eighth Amendment claims.

In addition, to the extent that Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs is based upon allegations that Defendants Davis and Price were deliberately indifferent when they "neglect[ed] to treat Plaintiff's injury . . . " (Doc. 1-1 ¶ 62), the Court finds that such allegations fail to state an Eighth Amendment claim. Simply put, allegations of negligence do not rise to the level of a constitutional violation. *See Parkell*, 833 F.3d at 337; *Spruill*, 372 F.3d at 235; *Rouse*, 182 F.3d at 197.

46

This leaves two remaining Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs against the DOC Defendants—*i.e.*, (1) Defendants Davis and Price refused to follow Defendant John Doe's prescribed treatment plan (*id.* ¶¶ 59, 60, 62), and Defendants Davis and Price failed to respond to Plaintiff's inmate request and sick call slips (*id.* ¶ 60).

The DOC Defendants argue that Plaintiff's complaint reveals that he received medical treatment and that his claims are, essentially, a disagreement over that treatment. (Doc. 35 at 22 (arguing that "the mere fact [Plaintiff] did not receive the treatment and accommodations he wanted . . . cannot amount to an Eighth Amendment violation").) The DOC Defendants also argue that Plaintiff "made an improper request to the medical department before filing a sick call slip[,]" and then "proceeded to file multiple sick call requests demanding use of the medical shower" and "bottom bunk status[,]" to which Defendant Davis responded and explained that neither he nor Defendant Price could authorize the use of medical showers or bottom bunk status and that only Defendant Jane Doe could do so. (*Id.*) The Court agrees that dismissal of these claims is warranted, but for different reasons.

Plaintiff's complaint establishes that he received the following medical treatment for his injury after the May 14, 2021 weightlifting incident: he was assessed by medical and recommended to continually move (Doc. 1-1 ¶ 19); he had been referred to physical therapy and seen by a physical therapist (*id.* ¶¶ 38–39, 49); he had undergone an x-ray of his back (*id.* ¶¶ 31–32); he was issued medication—including Motrin and Celebrex (*id.* ¶¶ 13, 21, 32); and he was provided with a Ziploc bag to fill with hot water as a multi-use heat pack (*id.* ¶ 43).[7] As such, the Court agrees with the DOC Defendants that, generally speaking, Plaintiff's complaint suggests mere disagreement over the treatment he received, which, as discussed above, is insufficient to state an Eighth Amendment violation. *Spruill*, 372 F.3d at 235.

Moreover, to the extent that Plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs are based upon the alleged denial of a change in housing and/or use of the medical shower by Defendants Davis and Price, the Court finds that this claim is

---

[7] To the extent that Plaintiff's complaint broadly alleges that the tap water in his cell "does not get hot" (Doc. 1-1 ¶ 43), the Court notes that Plaintiff's complaint is bereft of any allegations that whoever provided Plaintiff with a Ziploc bag (assuming it was a named Defendant) knew that the tap water in his cell does not get "hot."

duplicative of his Eighth Amendment conditions of confinement claim discussed above. Specifically, the Court finds that the alleged denials sound in the conditions of Plaintiff's confinement and not in the adequacy of the medical treatment he received. This conclusion is particularly appropriate where, as here, there are no allegations that either Defendants Davis or Price saw or treated Plaintiff. Rather, they are alleged to have denied him, in a more administrative fashion, a change in housing and/or use of the medical shower.[8]

Accordingly, the Court concludes that Plaintiff's complaint fails to state Eighth Amendment claims against Defendants Davis and Price for deliberate indifference to his serious medical needs. The Court will recommend, therefore, that the DOC Defendants' motion be granted as to these Eighth Amendment claims.

---

[8] Notably, the Court finds it plausible that Plaintiff could have received appropriate medical treatment, but still required a change in housing and/or use of a particular shower pending recovery of his injury. As such, the Court finds it appropriate to construe these allegations as stating a conditions of confinement claim rather than a medical-needs claim. However, the Court acknowledges that the line between these two claims is blurred and that the allegations asserted in support of these claims overlap.

### e. Defendant Thompson

The DOC Defendants have not addressed Defendant Thompson. *See* (Docs. 34, 35). However, Plaintiff's complaint asserts an Eighth Amendment conditions of confinement claim against Defendant Thompson based upon an allegation that he denied Plaintiff showers. *See* (Doc. 1 ¶ 64 (alleging that Defendant Thompson denied him a shower "for nearly two years, constitut[ing] cruel & unusual punishment in violation of the Eighth Amendment to the United States Constitution")).

Although the DOC Defendants have not addressed this claim, the Court has a continuing statutory obligation to conduct a review of Plaintiff's complaint because he was granted leave to proceed *in forma pauperis* in this matter. *See* (Doc. 11); 28 U.S.C. § 1915(e)(2)(B). In conducting this review, the Court concludes that Plaintiff's complaint fails to set forth any factual allegations suggesting that Defendant Thompson was personally involved in the acts or omissions that he claims violated his Eighth Amendment rights. More specifically, Plaintiff's complaint has not alleged Defendant Thompson's participation or actual knowledge of and acquiescence in any wrongdoing concerning Plaintiff's

need for showering.   *See Chavarriaga*, 906 F.3d at 222.[9]   Moreover,

Plaintiff's broad and conclusory allegation that Defendant Thompson

denied him a shower for nearly two years is simply insufficient to state a

claim for relief.   *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d

Cir. 2010) (explaining that conclusory allegations "are not entitled to the

assumption of truth" when determining the sufficiency of a complaint

under federal pleading standards (citation and internal quotation marks

omitted)).  Accordingly, the Court will recommend that Plaintiff's Eighth

Amendment conditions of confinement claim be dismissed against

Defendant Thompson.

### 2.  Plaintiff's Medical Negligence Claims Against the DOC Defendants

Plaintiff's complaint asserts medical negligence claims under

Pennsylvania law against the following DOC Defendants: McCorsick;

Davis; and Price.  (Doc. 1-1 ¶¶ 66, 68.)  In support, Plaintiff broadly

---

[9]  At most, Plaintiff's complaint alleges that, on May 15, 2021, the day after the weightlifting incident, Defendant Thompson informed another corrections officer that Plaintiff was "already on callout" so Plaintiff could "wait" until medical called for him.  (Doc. 1 ¶ 16.)  The Court neither discerns any violation of the Eighth Amendment based upon this sole allegation, nor finds that this sole allegation demonstrates that Defendant Thompson denied Plaintiff a shower for nearly two years.

asserts that they "neglect[ed] their duty of care in their lack of treatment of [his] injury . . . " (*id.* ¶ 66), and they "fail[ed] in their duty to properly treat [and] care for [him] . . . " (*id.* ¶ 68). In response, the DOC Defendants argue that these medical negligence claims should be dismissed in accordance with Pennsylvania's Rules governing certificates of merit. (Doc. 35 at 23–24.) The Court agrees.

As an initial starting point, the Court observes that, with respect to the DOC Defendants, Plaintiff has filed a certificate of merit only as to Defendants Davis and Price, and not as to Defendant McCorsick. (Doc. 47 at 4, 5.) Regardless, the Court concludes, as it did above with respect to the Medical Defendants, that the limited exception of *res ipsa loquitur* does not apply here and that, therefore, medical expert testimony is required for Plaintiff to prove his medical negligence claims. Accordingly, the Court will recommend that the DOC Defendants' motion to dismiss be granted as to Plaintiff's medical negligence claims asserted against them under Pennsylvania law.

### 3. Plaintiff's Ordinary Negligence Claim Against the DOC Defendants

Finally, Plaintiff's complaint asserts an ordinary negligence claim against Defendant Crull "for failing to ensure weight equipment was not faulty[.]" (Doc. 1-1 ¶ 67). The DOC Defendants argue that, "[w]ith the dismissal of [Plaintiff's] Section 1983 claims, the Court no longer has supplemental jurisdiction over his state law negligence claim" concerning the weightlifting machine. (Doc. 35 at 24.) As such, the DOC Defendants argue that the Court should dismiss this negligence claim "for lack of supplemental jurisdiction." (*Id.* at 25.)

As discussed above, however, the Court has determined that Plaintiff should be permitted to proceed on his Eighth Amendment conditions of confinement claim based upon allegations that Defendants Davis, Price, and Goss were deliberately indifferent to his basic human need of showering. In light of this determination, the Court cannot conclude, at this time, that it lacks supplemental jurisdiction over Plaintiff's negligence claim as it relates to the weightlifting equipment. As such, the Court will recommend that the DOC Defendants' motion be denied as to Plaintiff's ordinary negligence claim asserted against Defendant Crull.

## V.   Conclusion

For the foregoing reasons, IT IS RECOMMENDED THAT:

1. The Medical Defendants' motion (Doc. 32) be granted, and Plaintiff's Eighth Amendment claims under Section 1983 and Plaintiff's medical negligence claim under Pennsylvania law be dismissed;

2. The DOC Defendants' motion (Doc. 34) be granted in part and denied in part, as follows:

   a. Their motion be granted as to Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Crull regarding the weightlifting equipment;

   b. Their motion be granted as to Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Butler and McCorsick regarding their alleged failure to provide Plaintiff with bottom tier/bottom bunk status;

   c. Their motion be granted as to Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Price and Davis regarding the lack of an infirmary;

    d. Their motion be granted as to Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendants Davis, Price, and McCorsick;

    e. Their motion be denied as to Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Davis, Price, and Goss regarding Plaintiff's housing assignment and need for showers;

    f. Their motion be denied as to Plaintiff's Pennsylvania ordinary negligence claim against Defendant Crull regarding the weightlifting machine;

3. Plaintiff's Eighth Amendment conditions of confinement claim be dismissed against Defendant Thompson regarding Plaintiff's need for showers;

4. In light of the foregoing, Plaintiff be permitted to proceed on the following claims: (1) his Eighth Amendment conditions of confinement claim under Section 1983 against Defendants Davis, Price, and Goss regarding Plaintiff's housing assignment and need for showers; and (2) his Pennsylvania ordinary negligence claim

under Pennsylvania law against Defendant Crull regarding the weightlifting equipment; and

5. In the event that the foregoing is adopted, the following Defendants be terminated from the Court's docket: John Doe; Jane Doe; Brown; Gabby; McCorsick; Butler; and Thompson.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of August 2024.

*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge
